UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MAYA SCHULERT, an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>HUDSON CLOTHING, LLC,<br><br>Defendant. | CASE NO. 2:15-cv-00276-JDL<br><br>**AMENDED CLASS ACTION COMPLAINT** |

Plaintiff Maya Schulert ("Plaintiff"), as an individual and on behalf of all others similarly situated, by her undersigned attorneys, alleges as follows:

## NATURE OF THE CASE

1.  This is a class action brought on behalf of all purchasers of Hudson jeans manufactured, distributed, marketed, and/or sold by Hudson Clothing, LLC ("Hudson" or "Defendant") that were labeled and/or advertised as "Made in USA" but that contained foreign-made component parts (hereinafter referred to as "the Jeans"). The Jeans are sold at various retail stores in Maine. The Jeans are also sold by Hudson via its website (www.hudsonjeans.com), and through other retailer websites, directly to consumers throughout Maine and the United States.

2.  During the last six years, Hudson manufactured, distributed, marketed, and sold a variety of Jeans to various consumers throughout Maine with the false designation and representation that the Jeans were "Made in USA." The "Made in USA" label was clearly printed on the product. Contrary to the "Made in USA" claim, however, the Jeans were manufactured or produced from component parts that were manufactured outside of the United States. Through its unlawful, deceptive and unfair course of conduct, Defendant ran afoul of Maine and federal law, and injured Plaintiff and other purchasers of its Jeans.

## PARTIES

3.  At the time of her purchase, Plaintiff resided in Kennebunk, Maine. She is currently a resident of Chelsea, Massachusetts.

4.  Defendant Hudson Clothing, LLC is a California limited liability company that is organized and exists under the laws of the State of California. Its business address (as listed on the California Secretary of State website) is 1231 S. Gerhart Ave., Commerce, CA 90022. Hudson can be served in California via its registered agent for service of process: Jorge Arciniega, 2049 Century Park East, Suite 3800, Los Angeles, CA 90022.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5,000,000 exclusive of interest and costs, there are more than

one hundred Class members, and minimal diversity exists because Plaintiff and numerous members of the Class are citizens of different states than Defendant.

6. This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts with Maine and Defendant otherwise purposely avails itself of the markets in Maine through the promotion, marketing, and sale of its products and services in Maine to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(a) because (1) Defendant is subject to personal jurisdiction in the District of Maine, and (2) a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Defendant engaged in the extensive promotion, marketing, distribution, and sales of the products at issue in this District, and (3) Plaintiff is a resident of this District.

## GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

8. Plaintiff incorporates herein each and every allegation contained in paragraphs 1 through 7, inclusive, as though fully set forth herein.

9. Maine's consumer laws directly prohibit misrepresenting the origin of a consumer good. The Maine Unfair Trade Practices Act ("MUTPA") provides that "[u]nfair methods of competition and unfair or deceptive practices in the conduct of any trade or commerce are declared unlawful." 5 M.R.S.A.§ 207. The withholding of material information (i.e., failing to state a material fact) and the making unsubstantiated advertising claims are two primary categories of practices which have been prohibited as unfair under Maine law.

10. In addition, the Maine Deceptive Trade Practices Act ("MDTPA") outlaws various deceptive practices. 10 M.R.S.A. § 1212. Relevant here, the MDTPA provides that "[a] person engages in a deceptive trade practice when, in the course of his business, vocation or occupation, he . . . [u]ses deceptive representations or designations of geographic origin in connection with goods or services." 10 M.R.S.A. § 1212(1)(D).

11. Additionally, in construing the meaning of "unfair or deceptive acts or practices"

under Maine law, courts are to be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. 45(a)(1). 5 M.R.S.A. § 207(1).

12. The Federal Trade Commission Act ("FTCA") provides in relevant part that: "To the extent any person introduces, delivers for introduction, sells, advertises, or offers for sale in commerce a product with a 'Made in the U.S.A.' or 'Made in America' label, or the equivalent thereof, in order to represent that such product was in whole or substantial part of domestic origin, such label shall be consistent with decisions and orders of the Federal Trade Commission issued pursuant to section 45 of this title." 15 U.S.C. § 45a.

13. According to the Federal Trade Commission ("FTC"), an unqualified statement of U.S. origin is deceptive unless "all or virtually all" of the components are domestic; that is, the product must contain no more than a *de minimis* amount of foreign content. 62 FR 63756–01 at pp. 63757, 63764–65.

14. During the relevant six-year statutory time period, Defendant manufactured, marketed, distributed and sold Jeans conspicuously labeled as "Made in USA" and "MADE IN LOS ANGELES, USA."

15. Contrary to the these claims, however, the Jeans were made, manufactured, and produced with component parts that are manufactured outside of the United States. On information and belief, the Jeans are made with foreign-made buttons, rivets, zipper assembly, thread, and/or fabric in violation of Maine law and federal apparel labeling laws.

16. Not only did Defendant market and falsely represent to consumers that its Jeans were "Made in USA" and "MADE IN LOS ANGELES, USA," but Defendant concealed the true country of origin of its Jeans to the general public. Defendant's disclosure of this information was necessary in order to avoid misleading its consumers. Defendant possesses superior knowledge of the true facts which were not disclosed, thereby tolling the running of any applicable statute of limitations.

17. Consumers are particularly vulnerable to these deceptive and fraudulent practices.

Most consumers possess very limited knowledge of the likelihood that products, including the component parts therein, claimed to be made in the United States are in fact made in foreign countries. This is a material factor in many individuals' purchasing decisions, as they believe they are supporting American companies and American jobs.

18. Consumers generally believe that "Made in USA" products are of higher quality than their foreign-manufactured counterparts. In addition, consumers regularly pay higher prices for products that they believe are American made, and paid higher prices for these Jeans than they otherwise would have. As alleged herein, due to Defendant's scheme to defraud the market, members of the general public were fraudulently induced to purchase Defendant's products. Maine's consumer laws are designed to protect consumers from this type of false representation and predatory conduct. Defendant's scheme to defraud consumers is ongoing and will victimize consumers each and every day until altered by judicial intervention.

### THE PLAINTIFF TRANSACTION

19. In or about around August 2013, Plaintiff purchased Hudson jeans from Nordstrom Rack in South Portland, Maine. At the time of purchase, the label of the Jeans, as well as the Jeans themselves, were marked with "Made in USA" and "MADE IN LOS ANGELES, USA" designations, as is indicated by the following pictures of the Jeans:





20. In making her purchasing decision, Plaintiff saw and relied upon the "Made in USA" and "MADE IN LOS ANGELES, USA" claims on the Jeans. Plaintiff believed at the time she purchased the Jeans that she was in fact supporting American jobs and the American economy. She also believed she was getting a more dependable and higher quality product.

21. Defendant was not entitled to make "Made in USA" representations because the representations were false, deceptive, and misleading. In addition, the said representations violated Maine and federal laws on descriptions concerning the origin of a consumer good, because more than a *de minimis* amount of the Jeans come from outside the United States.

22. Plaintiff suffered an injury in fact because Plaintiff's money was taken by Defendant as a result of Defendant's false "Made in USA" and "MADE IN LOS ANGELES, USA" claims set forth on the offending product (through its customary retail channels), and by paying for something she believed was genuinely manufactured in the USA when it was not. Furthermore, Plaintiff paid more for the Jeans than she would have had she known they were not in fact "Made in USA," and Defendant was able to charge more for the Jeans by falsely labeling them as "Made in USA" and "MADE IN LOS ANGELES, USA."

23. On information and belief, the Jeans at issue in this litigation were manufactured with substandard foreign-made parts that are of inferior quality to their U.S.-manufactured

5

counterparts. In short, the Jeans are not worth the purchase price paid. Class Members are entitled to monetary damages or restitution (the specific measure of which is the realm of expert testimony).

24. U.S.-made component parts are subject to strict regulatory requirements, such as environmental, labor, and safety standards. Foreign-made component parts are not subject to the same U.S. manufacturing standards and are inherently of lower quality than their U.S.-made counterparts. Moreover, foreign-made component parts are less reliable and durable than their U.S.-made counterparts. As such, the offending Jeans, made with foreign-made component parts (yet unlawfully labeled "Made in USA" and "MADE IN LOS ANGELES, USA") are of inferior quality, are less reliable, and fail more often.

25. Plaintiff and Class Members were undoubtedly injured as a result of Defendant's false representations that its Jeans were "Made in USA" and "MADE IN LOS ANGELES, USA."

26. Under the MUTPA, on July 7, 2015, a written demand for relief, identifying Plaintiff Maya Schulert and the Class and reasonably describing the unfair or deceptive acts or practices relied upon and the injury suffered by Plaintiff and the Class, was mailed to Defendant.

## CLASS ALLEGATIONS

27. Plaintiff brings this action on behalf of herself as an individual and on behalf of all other persons similarly situated in Maine who purchased Defendant's Jeans in the past six years. Specifically excluded from the class are any persons who have a controlling interest in Defendant, any of Defendant's parent companies, subsidiaries, and Defendant's officers, directors, managers, shareholders and members of their immediate families, and their heirs, successors and assigns (the "Class"). The class also does not include any persons who previously filed suit against Defendant for similar violations of Maine law and/or the Honorable Judge presiding over this matter and his or her judicial staff.

28. All causes of action herein have been brought and may properly be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable:

a. <u>Numerosity</u>: On information and belief, the Class is so numerous that the individual joinder of all members would be impracticable. The exact number and identities of the members of the Class are readily ascertainable from the records in Defendant's possession or that of its retail customers.

b. <u>Common Questions Predominate</u>: Common questions of law and fact exist as to all members of the Class, and those questions clearly predominate over any questions that might affect members individually. These common questions of law and fact include, for example, whether Defendant's above-described actions were false and misleading, whether Defendant violated the MDTPA and/or the MUTPA by misrepresenting the country of origin of the Jeans because component parts within the product are manufactured outside the United States, whether Defendant's actions in this regard violated the FTCA, and whether Defendant was unjustly enriched at Plaintiff's expense.

c. <u>Typicality</u>: On information and belief, Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class sustained damages arising out of Defendant's common course of conduct complained herein.

d. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the members of the Class because Plaintiff has no interests which are adverse to the interests of absent class members and because Plaintiff has retained counsel who possesses significant litigation experience regarding violations of consumer statutes.

e. <u>Superiority</u>: A class action is superior to other available means for the fair and efficient adjudication of this controversy since individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, since most class members' individual claims for damages are likely to be modest, the expenses and burdens of litigating individual actions would make it difficult or impossible for individual members of the Class to redress the wrongs done to them. An important public interest

will be served by addressing the matter as a class action, substantial economies to the litigants and to the judicial system will be realized and the potential for inconsistent or contradictory judgments will be avoided.

## FIRST CAUSE OF ACTION

### Violation of the Maine Deceptive Trade Practices Act

29. Plaintiff realleges and incorporates herein by reference all of the allegations contained in Paragraphs 1 through 28, inclusive, of this complaint as though fully set forth herein.

30. The MDTPA, 10 M.R.S.A. §1211 *et seq.*, forbids a person from engaging in various deceptive practices. Relevant here, the MDTPA provides that "[a] person engages in a deceptive trade practice when, in the course of his business, vocation or occupation, he . . . [u]ses deceptive representations or designations of geographic origin in connection with goods or services." 10 M.R.S.A. § 1212(1)(D).

31. By manufacturing, distributing, marketing, and selling products with a false country of origin designation and by falsely claiming that the products referenced herein are "Made in USA" and "MADE IN LOS ANGELES, USA" when they are in fact made with component parts manufactured outside of the United States, Defendant violated the MDTPA.

32. Defendant's violation of the MDTPA is present and ongoing.

33. Defendant's illicit conduct occurred in the State of Maine.

34. As a result of the foregoing, Plaintiff seeks an injunction prohibiting Defendant from continuing to mislabel its Jeans, along with attorney's fees.

## SECOND CAUSE OF ACTION

### Negligent Misrepresentation

35. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 34, as though set forth in full.

36. During the relevant statutory time period, Defendant made false "Made in USA" country of origin designations to Plaintiff and Class Members as it pertains to the sale of the Jeans.

37. The representations that Defendant's Jeans were "Made in USA" and "MADE IN LOS ANGELES, USA" were false as defined by Maine and federal law. The true facts are that Defendant sold "Made in USA" and "MADE IN LOS ANGELES, USA" labeled Jeans with foreign-made component parts in violation of Maine and federal law.

38. When Defendant made the representations set forth above, it had no reasonable grounds for believing them to be true.

39. Defendant made the representations with the intention of inducing Plaintiff and Class Members to act in reliance upon these representations in the manner hereafter alleged, or with the expectation that they would so act.

40. At the time the representations were made by Defendant and at the time Defendant took the actions herein alleged, Plaintiff and the Class Members were ignorant of the falsity of the representations and believed them to be true. In reliance on these representations, Plaintiff and Class Members were induced to and did pay monies to purchase Defendant's products.

41. Had Plaintiff and Class Members known the actual facts, they would not have taken such action. Furthermore, Plaintiff and other consumers had no reason to believe that Defendant would act otherwise than as to rely on the "Made in USA" country of origin designations.

42. Without knowledge, Plaintiff and Class Members acted on the false country of origin designation and purchased products they did not truly want. Had Plaintiff and Class Members known the actual facts, they would not have taken such action, and would not have paid a premium price of the Jeans.

43. As a proximate result of the fraudulent conduct of Defendant as herein alleged, Plaintiff and Class Members paid monies to Defendant, through Defendant's regular retail sales channels, to which Defendant is not entitled, and have been damaged in an amount to be proven at trial.

44. By reason of the foregoing, Plaintiff and the other Class members have suffered damages in an amount to be proved at trial, together with punitive damages.

## THIRD CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability

45. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 44, as though set forth in full.

46. Under Maine law, "[g]oods to be merchantable must at least be such as," among other things, "(f) conform to the promises or affirmations of fact made on the container or label if any." 11 M.R.S.A. § 2-314.

47. As set forth above, Defendant's Jeans do not "conform to the promises or affirmations of fact made on the [Jeans'] container or label."

48. Plaintiff and the other Class members reasonably relied upon the representations on the Jeans' label to their detriment.

49. By reason of the foregoing, Plaintiff and the other Class members have suffered damages in an amount to be proved at trial, together with punitive damages.

## FOURTH CAUSE OF ACTION

### Breach of Express Warranty

50. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 49, as though set forth in full.

51. Defendant provided Plaintiff and other members of the Class with written express warranties, including warranties that its Jeans were "Made in USA" and "MADE IN LOS ANGELES, USA," as set forth above.

52. Defendant breached these warranties by providing Jeans to Plaintiff and members of the Class produced from component parts that were manufactured outside of the United States.

53. As a proximate cause of Defendant's breaches of warranties, Plaintiff and the other Class members have suffered damages in an amount to be determined at trial, together with punitive damages.

## FIFTH CAUSE OF ACTION

### Unjust Enrichment

54.    Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 53, as though set forth in full.

55.    As a result of Defendant's unlawful and deceptive actions described above, Defendant was enriched at the expense of Plaintiff and the Class through the payment of the purchase price for the Jeans, or in the alternative, through the premium price paid by Plaintiff and the Class Members as a result of Defendant's unlawful and deceptive actions.

56.    In engaging in the unlawful and deceptive conduct described above, Defendant appreciated that it was unjustly enriching itself and Plaintiff's expense.

57.    Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiff and the Class.

58.    As a result of Defendant's unlawful and deceptive actions described above, Defendant was enriched at the expense of Plaintiff and the Class through the payment of the purchase price for the Jeans, or in the alternative, through the premium price paid by Plaintiff and the Class Members as a result of Defendant's unlawful and deceptive actions.

## SIXTH CAUSE OF ACTION

### Violation of the Maine Unfair Trade Practices Act

59.    Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 58, as though set forth in full.

60.    The MUTPA provides that "[u]nfair methods of competition and unfair or deceptive practices in the conduct of any trade or commerce are declared unlawful." 5 M.R.S.A. § 207. The withholding of material information (i.e., failing to state a material fact) and making unsubstantiated advertising claims are two primary categories of practices which have been prohibited as unfair under Maine law.

61.    By manufacturing, distributing, marketing, and selling products with a false country of origin designation and by falsely claiming that the products referenced herein are

Case 2:15-cv-00276-JDL   Document 5   Filed 08/10/15   Page 13 of 16   PageID #: 31

"Made in USA" and "MADE IN LOS ANGELES, USA" when they are in fact made with component parts manufactured outside of the United States, Defendant committed unfair and deceptive acts, in violation of the MUTPA.

62.  Defendant further violated the MUTPA by concealing the country of origin of the Jeans from the general public.

63.  Additionally, in construing the meaning of "unfair or deceptive acts or practices" under Maine law, courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. 45(a)(1). 5 M.R.S.A. § 207(1).

64.  By manufacturing, distributing, marketing, and selling products with a false country of origin designation and by falsely claiming that the products referenced herein are "Made in USA" and "MADE IN LOS ANGELES, USA" when they are in fact made with more than a *de minimis* amount of foreign content, Defendant violated the FTCA, and by extension, the MUTPA. 15 U.S.C. § 45a; 62 FR 63756–01 at pp. 63757, 63764–65.

65.  As a direct and proximate result of Defendant's deceptive, fraudulent, and unfair practices, Plaintiff and Class members have suffered injury in fact and/or actual damages in an amount to be determined at trial.

66.  Under the MUTPA, on July 7, 2015, more than 30 days before alleging a claim under the MUTPA, a written demand for relief, identifying Plaintiff Maya Schulert and the Class and reasonably describing the unfair or deceptive acts or practices relied upon and the injury suffered by Plaintiff and the Class, was mailed to Defendant. 5 M.R.S.A. § 213.1-A. Defendant failed to respond to the demand letters in a reasonable manner. As a result, Plaintiff seeks all relief available pursuant to the Maine Unfair Trade Practices Act, including compensatory damages, attorneys' fees, and injunctive relief.

## JURY DEMAND

Plaintiff hereby demand a trial by jury on all issues so properly triable thereby.

12

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually, and on behalf of all other similarly situated persons, prays for judgment against Defendant as follows:

A. For an order awarding, as appropriate, damages to the Plaintiff and the Class;

B. For an order certifying this case as a class action and appointing Plaintiff and Plaintiff's counsel to represent the Class;

C. For an order requiring Defendant to immediately cease and desist from selling the Jeans in violation of law and enjoining Defendant from continuing to manufacture, deliver, offer to deliver, market, advertise, distribute, and sell the Jeans in the unlawful, unfair, and deceptive manner described herein;

D. For an order awarding attorneys' fees and costs;

E. For an order awarding punitive damages;

F. For an order awarding pre-judgment and post-judgment interest; and

G. For such other and further relief as this Court finds just, equitable and proper, including, but not limited to, the remedy of disgorgement.

Dated: Portland, Maine
August 10, 2015

    MITTELASEN, LLC

    By: _/s/ Robert Edmond Mittel___

    Robert Edmond Mittel
    Maria Fox
    MITTELASEN, LLC
    85 Exchange St., 4th Floor
    Portland, ME 04101
    Telephone: (207) 775-3101
    Facsimile: (207) 871-0683
    rmittel@mittelasen.com
    mfox@mittelasen.com

    Erica C. Mirabella
    MIRABELLA LAW, LLC
    132 Boylston Street, 5th Floor
    Boston, MA 02116
    Telephone: (617) 580-8270
    Facsimile: (617) 583-1905
    erica@mirabellaLLC.com

Jonathan W. Cuneo
CUNEO GILBERT & LADUCA, LLP
507 C Street, NE
Washington, DC 20002
Telephone: (202) 789-3960
Facsimile: (202) 589-1813
jonc@cuneolaw.com

Taylor Asen
CUNEO GILBERT & LADUCA, LLP
16 Court Street, Suite 1012
Brooklyn, NY 11241
Telephone: (202) 789-3960
Facsimile: (202) 589-1813
tasen@cuneolaw.com

John Donboli
DEL MAR LAW GROUP, LLP
12250 El Camino Real, Suite 120
San Diego, CA 92130
Telephone: (858) 793-6244
Facsimile: (858) 793-6005
jdonboli@delmarlawgroup.com

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 10, 2015 the foregoing First Amended Complaint was served upon all registered parties via the court's CM/ECF system, as well as the following unregistered party via email and First Class Mail:

Hudson Clothing, LLC
c/o Devin J. Stone, Esq.
Devin.Stone@btlaw.com
Barnes & Thornburg LLP
1717 Pennsylvania Avenue N.W., Ste 500
Washington, D.C. 20006-4623

                                                              /s/ Maria Fox
                                                              MITTELASEN, LLC
                                                              85 Exchange Street, 4th Floor
                                                              Portland, ME  04101
                                                              Telephone: (207) 775-3101
                                                              Facsimile: (207) 871-0683
                                                              mfox@mittelasen.com